**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § § § | **GENERAL ORDER** |
| **TEXAS EZPAWN FAIR LABOR STANDARDS ACT LITIGATION** | § § § § | |

Before the Court are Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, if Any, filed on March 4, 2008 ("Motion"), Plaintiffs' Response in Opposition to Defendant's Partial Motion for Summary Judgment on the Calculation of Damages, if Any, filed on March 31, 2008 ("Response"), Plaintiff's Objections to Defendant's Summary Judgment Evidence, filed on March 31, 2008, Defendant's Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on the Calculation of Damages, if Any, filed on April 8, 2008 ("Reply"), Defendant's Objections to Plaintiff's Summary Judgement Evidence, filed on April 8, 2008, and Defendant's Response to Plaintiff's Objections to Defendant's Summary Judgment Evidence, filed on April 8, 2008. The foregoing pleadings were filed in each of the cases identified in the attached Appendix.

## I.  BACKGROUND

The cases identified in the attached Appendix are Fair Labor Standards Act ("FLSA") cases involving allegations that Defendant Texas EZPawn, L.P. ("EZPawn") improperly classified employees and failed to pay them overtime compensation as required by the FLSA. EZPawn is the owner and operator of more than 100 retail pawn and short-term loan establishments throughout Texas. Plaintiffs are former assistant store managers who claim they were improperly classified as exempt employees under the FLSA and not compensated for hours worked in excess of forty per

week as required by 29 U.S.C. § 207(a)(1).  EZPawn claims Plaintiffs were properly classified as exempt and are not entitled to any overtime compensation.

EZPawn seeks partial summary judgment concerning the proper method of calculating damages.  EZPawn argues that the appropriate method of calculating damages in misclassification cases such as those presently before the Court is the fluctuating workweek method found at 29 C.F.R. § 778.114.  According to EZPawn, the United States Court of Appeals for the Fifth Circuit's decision in *Blackmon v. Brookshire Grocery Company* requires that, in the event Plaintiffs establish liability, they are only entitled to half of their hourly rate of pay for each hour worked over forty. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988).

In response, Plaintiffs make three arguments. First, Plaintiffs argue EZPawn waived its argument that the fluctuating workweek method of calculating damages applies in this case because it was not pled in Defendant's initial responsive pleading as required by Rule 8.  Second, they argue the fluctuating workweek method of calculating damages is not applicable as a matter of law.  Third, Plaintiffs argue fact issues preclude summary judgment.  Having considered the Motion, Response, Reply, and oral argument of the parties, the Court is of the opinion that the fluctuating workweek method of calculating damages is not applicable to the cases identified in the attached Appendix, and that Defendant's Motion should therefore be denied.[1]

---

[1]Because in reaching its decision the Court need not rely upon the evidence objected to by the parties, Plaintiff's Objections to Defendant's Summary Judgment Evidence and Defendant's Objections to Plaintiff's Summary Judgement Evidence are OVERRULED AS MOOT.

## II.  ANALYSIS

### A.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Flath v. Garrison Pub. Sch. Dist. No. 51*, 82 F.3d 244, 246 (8th Cir. 1996) (internal quotations omitted).  "An issue is material if its resolution could affect the outcome of the action." *Commerce and Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).  In deciding whether a fact issue exists, the court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The nonmovant may not rely on mere allegations in the pleadings. *Id*.  Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.,* 44 F.3d 308, 312 (5th Cir. 1995).  Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997).  The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the

record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

###    B.    Fluctuating Workweek Pleading Requirements

Federal Rule of Civil Procedure 8 requires that a party state any affirmative defense or avoidance in a responsive pleading. FED. R. CIV. P. 8(a). Plaintiffs argue that EZPawn has waived the fluctuating workweek "defense" because it failed to timely raise the defense in its initial responsive pleading as required by Rule 8 of the Federal Rules of Civil Procedure. According to Plaintiffs, the fluctuating workweek is a defense that must be timely pled because it is a method by which an employer may avoid paying damages for unpaid overtime. In response, EZPawn argues that the fluctuating workweek is not an affirmative defense, but rather a method of calculating damages, the application of which is a matter of law for the Court to decide.

The Court agrees with EZPawn that the damage theory is not an affirmative defense required to be pled by Rule 8. *See Hopkins v. Tex. Mast Climbers, L.L.C.*, No. Civ. A. H-04-1884, 2005 WL 3435033, at *7 (S.D. Tex. Dec. 14, 2005) (noting that the fluctuating workweek is not a defense or exemption to the FLSA, but rather an interpretive bulletin addressing a permissible payment scheme under the FLSA). Even if Rule 8 required EZPawn to affirmatively plead the damage methodology, there is no waiver of a defense when a defendant raises the issue at a "pragmatically sufficient time" and the plaintiff is not prejudiced in responding. *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). Here, the issue of whether the fluctuating workweek method of calculating damages applies to this case was raised sufficiently early so as to avoid any unfair surprise. Plaintiffs have made no showing of prejudice due to the absence of an allegation in EZPawn's responsive pleadings that the method applies in this case. They have had ample time to address the issue in response to EZPawn's

4

Motion and during oral argument.  Moreover, as EZPawn correctly points out in footnote eight of

its Reply, Plaintiffs' counsel has been on notice of EZPawn's position regarding the fluctuating

workweek method of calculating damages since at least September 26, 2007.  Therefore, Plaintiffs'

waiver argument is without merit.

### C.    The Fluctuating Workweek Method of Calculating Overtime Pay

The FLSA requires that non-exempt employees be paid at least one and one-half times their

regular rate of pay for all hours over forty worked during a particular week.  29 U.S.C. § 207(a).  In

1968 the Department of Labor issued a bulletin interpreting this section of the Act to address the

payment of overtime to salaried employees "who do not customarily work a regular schedule of

hours."  29 C.F.R. § 778.114(c).  The bulletin was issued in response to two Supreme Court cases

that had addressed payment of overtime to employees who had fluctuating hours from week to week,

and who wished to receive a predictable, flat rate of pay.  *See Overnight Motor Transp. Co. v.

Missel*, 316 U.S. 572 (1942); *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942).  Neither of these

cases concerned a misclassified employee, but rather both involved non-exempt workers who

employers were paying on a salary basis.[2]   In resolving the confusion that lingered after the

decisions, the Department of Labor adopted an interpretation of § 207(a) consistent with the *Missel*

decision.   *O'Brien v. Town of Agawam*, 350 F.3d 279, 287 n.15 (1st Cir. 2003) (noting that

§ 778.114 represents the Secretary of Labor's implementation of *Overnight Motor Transport

Company v. Missel*).[3]   The relevant portions of the bulletin provide:

---

[2]A thorough description of the cases, and the history of the flexible workweek compensation
method, can be found in *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 55-58 (D.D.C. 2006).

[3]In *Missel*, the Supreme Court addressed the application of the FLSA's overtime provisions
to an employee who contracted to work fluctuating hours for a fixed wage.  The employer contended

(a)      An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

* * *

(c)      The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no

---

that as long as the employee received a rate of regular pay sufficient to cover the minimum wage plus time and one-half for hours above the statutory maximum, the arrangement complied with the FLSA and no additional overtime was due. *Missel*, 316 U.S. at 575.  The Court disapproved of the arrangement and held that the FLSA requires regular pay plus 150% of the regular rate of pay for hours above the statutory maximum, not just the minimum wage. *Id.* at 577-78. The Court rejected the employer's argument because there was no provision for payment of compensation above the regular rate of pay if the employee worked more hours than his regular rate of pay would cover, including time and one-half for all hours above the statutory maximum, and because there was no cap on the number of hours that the employee could be required to work. *Id.* at 581.  The Supreme Court reasoned that one of the intended effects of the FLSA "was to require extra pay for overtime work by those covered by the act even though their hourly wages exceeded the statutory minimum." *Id.* at 577.  Essentially, the  ruling prohibits employers and employees from contracting out of the FLSA.

> workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole . . . . On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

29 C.F.R. § 778.114.

The Department's bulletin requires that five factors be present before an employer may use the fluctuating workweek method to pay a non-exempt employee: (1) a clear understanding between the parties; (2) varying hours worked from week to week; (3) payment of a fixed salary, regardless of the number of hours worked during a particular week; (4) payment of a salary equal to or greater than minimum wage; and (5) payment of compensation in addition to the salary for all overtime hours worked. *See* 29 C.F.R. § 778.114(a); *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 100; *see also Conne v. Speedee Cash*, No. 06-60377, 2007 U.S. App. LEXIS 17480, at *3-4 (5th Cir. July 23, 2007) (including requirement that employee receive additional compensation for overtime). The additional payment required by the fifth element is half of the regular hourly rate of pay for each hour worked over forty. *See* 29 C.F.R. § 778.114(a). The reasoning underlying the half hourly pay rate as opposed to the standard time and one-half rate is that, by way of agreement, the employee has already been compensated for all base hourly pay including the hours worked over forty. *See* 29 C.F.R. § 778.114(b).

**D.**     **Section 778.114 as a Means of Calculating Damages**

EZPawn argues that the methodology contained in 29 C.F.R. § 778.114 is appropriate to determine the unpaid overtime due Plaintiffs, should it be determined that Plaintiffs were not exempt from overtime pay.  Plaintiffs oppose the use of the formula for damages, contending that it is inapplicable to a misclassification case, and that even if it is potentially applicable to such a case, there are fact questions remaining for trial on whether some of the requirements of the bulletin have been met.  Section 778.114 is silent regarding whether it may be used as a method of calculating damages in misclassification cases.  Further, the Court has been unable to locate any statute, regulation, or Department of Labor opinion addressing use of the fluctuating workweek formula as a method for calculating damages, and the parties have cited to none.  Obviously the bulletin has no application to an employee who is exempt from overtime pay, as its purpose is to provide approval for a method of paying overtime to *non-exempt* employees.  By definition, in a misclassification situation the employer enters the employment relationship with the understanding that no overtime compensation is due to the employee, and thus the employer will never have applied the rule to the employee prior to the suit being filed.  Thus, in advocating that the formula be used to calculate the damages here, EZPawn is asking the Court to apply the rule retroactively, as it is undisputed that neither EZPawn nor the Plaintiffs broached the topic of a "flexible workweek" payment scheme at any time.

A number of courts – some with more analysis than others – have approved use of the fluctuating workweek compensation scheme of § 778.114 as a method of calculating damages in FLSA misclassification cases.  *See, e.g., Blackmon*, 835 at 1138 (finding that the correct method of calculating overtime in case where an employer and employee had agreed on a fixed salary for

varying hours was multiplying the regular rate of pay by one-half for each hour worked over forty), *Saizon v. Delta Concrete Prods. Co.*, 209 F. Supp. 2d 639, 640 (M.D. La. 2002) (following *Blackmon*).  Other courts have concluded that it is inappropriate to apply the compensation scheme to a misclassification case.  *E.g.*, *Rainey*, 26 F. Supp. 2d at 100 (refusing to apply the fluctuating workweek method of calculating damages where the employer classified the employee as exempt under the FLSA and did not pay contemporaneous overtime premiums).  Courts also disagree regarding the factors necessary to trigger the fluctuating workweek as a permissible method of calculating damages.  *See Hunter*, 453 F. Supp. 2d at 59 (comparing cases to illustrate the disagreement regarding whether the fluctuating workweek method of calculating damages requires the contemporaneous payment of overtime or whether the method may be used to retroactively calculate unpaid overtime for an employee improperly classified as exempt).[4]

---

[4]In reaching its decision today, the Court has reviewed all cases identified by the parties that discuss the use of the fluctuating workweek, as well as additional cases located by the Court's research, including all of the following: *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206 (5th Cir. 1976); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988); *Cox. v. Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001); *Condo v. Sysco Corp.*, 1 F.3d 599 (7th Cir. 1993); *Mayhew v. Wells*, 125 F.3d 216 (4th Cir. 1997); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Conne v. Speedee Cash*, No. 06-60377, 2007 U.S. App. LEXIS 17480 (5th Cir. July 23, 2007); *Spires v. Ben Hill County*, 745 F. Supp. 690 (M.D. Ga. 1990); *Burgess v. Catawba County*, 805 F. Supp. 341 (W.D.N.C. 1992); *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283 (N.D. Ill. 1995); *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215 (N.D.N.Y. 1998); *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1105 (S.D. Ind. 1998); *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82 (D.D.C. 1998); *Cowan v. Treetop Enters.*, 163 F. Supp. 2d 930 (M.D. Tenn. 2001); *Saizon v. Delta Concrete Prods. Co.*, 209 F. Supp. 2d 639 (M.D. La. 2002); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44 (D.D.C. 2006); *Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F. Supp. 2d 1379 (S.D. Fla. 2007); *Donihoo v. Dallas Airmotive, Inc.*, No. Civ. A. 3:97-CV-0109P, 1998 WL 47632 (N.D. Tex. Feb. 2, 1998); *Naylor v. DAI Envtl., Inc.*, No. 01 C 4253, 2004 WL 42347 (N.D. Ill. Jan. 6, 2004); *Tumulty v. FedEx Ground Package Sys., Inc.*, No. CO4-1425P, 2005 WL 1979104 (W.D. Wash. Aug. 16, 2005); *Hopkins v. Tex. Mast Climbers, L.L.C.*, No. Civ. A. H-04-1884, 2005 WL 3435033 (S.D. Tex. Dec. 14, 2005); *Perez v. Radioshack Corp.*, No. 02 C 7884, 2005 WL 3750320 (N.D. Ill. Dec. 14, 2005); *Tuck v. Methanex Mgmt., Inc.,* No. 3-04-CV-1720-N, 2006 U.S. Dist. LEXIS

The cases which apply the fluctuating workweek method to calculate damages struggle in their analysis with several elements of the bulletin (where the cases actually include analysis[5]). These analytic struggles are the result of the old "square peg in a round hole" problem – here, attempting to apply § 778.114 to a situation it was not intended to address.  As already noted, the bulletin was adopted to address a very specific issue: whether an employer may satisfy the overtime requirements of the FLSA while paying a non-exempt employee on a flat weekly or monthly basis. The plain language of the bulletin, and the requirements it imposes on employers, are quite difficult to apply to a lawsuit filed by an employee claiming that he has been misclassified.  Attempting to ascertain whether there was a "clear mutual understanding," for example, becomes awkward at best in a misclassification suit, as there was obviously *no* understanding on the issue, given that both employer and employee were acting on the assumption that the employee was exempt from overtime, and thus that the rule had no application to that job.

Further, the courts that have addressed this issue have ignored the nature of § 778.114.  As noted earlier, it is an interpretive bulletin issued by the Department of Labor, stating the Department's opinion regarding a specific compensation arrangement.  Despite the fact that most of the cases on this issue have described it as a "regulation," it is in fact not a rule – it is an interpretive bulletin – and it did not go through the rulemaking requirements of the Administrative

---

13751(N. D. Tex. March 29, 2006); *Scott v. OTS, Inc.*, No. 02-CV-1950, 2006 WL 870369 (N.D. Ga. Mar. 31, 2006).

[5]Several of the cases – including all of the decisions in this Circuit – contain no analysis whatsoever of the legal and regulatory issues raised by this question.  *E.g. Blackmon*, 835 F.2d at 1138; *Cox*, 919 F.2d at 357 (following *Blackmon*); *Saizan*, 209 F. Supp. 2d at 640 (following *Blackmon*) ; *Donihoo*, 1998 WL 47632 (following *Blackmon*); *Tuck v.* 2006 Dist. LEXIS 13751 (not citing any cases; relying solely on § 778.114).

Procedure Act (notice, public comment, appeal, etc.).  This means that it is not subject to the deference reserved for regulatory measures, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but rather is entitled to less deference, such as the "measure of respect" standard described in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 487-88 (2004).  Virtually none of the courts reviewing these issues have spent any time discussing the appropriateness of using the formula for remedial purposes, and have simply assumed it has the force of law.  And the one court that did address the question of the deference § 778.114 is entitled to, did so in relation to its use for its expressly-stated purpose (a payment formula for non-exempt employees), and even then it failed to recognize that § 778.114 was not a regulation, and thus the court incorrectly applied *Chevron* deference to it.  *See Condo v. Sysco Corp.*, 1 F.3d 599, 603-04 (7th Cir. 1993).[6]

EZPawn's argument assumes that the Department of Labor's interpretation contained in § 778.114 should be given the force of law, and that to do so is consistent with the FLSA.  The question thus is, assuming that the Department of Labor intended the bulletin to act not only as a permissible way to pay an employee, but also as the appropriate manner to remedy misclassification, is such an interpretation consistent with the remedial provisions of the FLSA?

---

[6]As with *Condo*, in *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001), the Fifth Circuit was also faced with a suit by non-exempt employees who were being paid pursuant to the flexible workweek method.  The court did not address the validity of § 778.114, however, as the parties apparently did not challenge the payment scheme on that basis.  Rather, the employees challenged the manner in which the payment method was applied to them, and complained that there had not been a clear mutual understanding between them and the employer.  *Condo* and *Samson* are both examples of cases in which § 778.114 is being used in the manner clearly contemplated by the bulletin – that is, where an employer is, on an ongoing basis, paying an employee a flat rate with an overtime premium – as opposed to attempting to apply the bulletin retroactively, as a measure of damages, as is being sought here.

Where Congress has specifically delegated to an agency the power to make rules to fill gaps in a statute, the rules developed by the agency are entitled to great deference – they are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *U.S. v. Mead Corp.*, 533 U.S. 218, 227 (2001).  On the other hand. "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citations omitted) (reviewing a Department of Labor opinion letter).  Nevertheless, ''the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.''' *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore*, 323 U.S. at 139–40).  The amount of deference an agency statement is entitled to will vary with the circumstances, and is dependent upon several factors, including "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228 (footnotes omitted).  As the Court noted in *Mead*, the spectrum ranges from "great respect at one end, to near indifference at the other." *Id*. (citations omitted).  One indicator that the higher level of deference is merited is the existence of "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 239; *see also Christensen*, 529 U.S. at 596–97 (Breyer, J., dissenting) (where it is doubtful that Congress intended to delegate particular interpretive authority to an agency, *Chevron* is ''inapplicable'').

As already noted several times, § 778.114 is a Department of Labor interpretive bulletin.  EZPawn's argument tacitly assumes that in issuing the bulletin, the Department intended to be

interpreting not only the overtime provisions of the FLSA (29 U.S.C. § 207(a)), but also the Act's remedial provisions (29 U.S.C. § 216(b)), as they argue that the bulletin should be given legal effect for the purpose of calculating damages.  Section 216(b), which creates an employee's right of action, states that an employer who violates § 207 "shall be liable to the employee affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Thus, in a misclassification suit a court must assess damages at two times the "unpaid overtime compensation."  Section 216(b) does not specifically define "unpaid overtime compensation."  However, the compensation due for overtime is set forth plainly in § 207(a), as "a rate not less than one and one-half times the regular rate at which [the employee] is employed."[7]  The plain language of the statute therefore requires that an employer violating § 207(a) is liable to an employee for the compensation required by § 207(a) – one and one-half times the employee's regular rate.  The Department has also issued bulletins addressing calculation of the "regular rate."  *See* 29 C.F.R. §§ 778.109, 778.113.  Subsection 109 provides the general rule that the "regular rate" means an hourly rate, and is determined by dividing an employee's total pay in any workweek by "the total number of hours actually worked by him in that workweek."  Subsection 113 deals with the specific situation of an employee receiving a salary, and states that for an employee with a weekly salary, the "regular hourly rate of pay, *on which time and a half must be paid*, is computed by dividing the salary by the number of hours which the salary is intended to compensate."

---

[7]Consistent with this, the definition of "overtime compensation" found in § 207(o)(7) is "the compensation required by subsection (a)."  However, the definition in § 207(o)(7) is expressly stated to be "for purposes of this subsection," *i.e.*, subsection 207(o).

29 C.F.R. § 778.113(a) (emphasis added).[8]  In sum, the FLSA specifically sets damages at two times

the "unpaid overtime compensation," which is set at one-and-a-half times the "regular rate."

Against this statutory backdrop, the Court must determine whether it is consistent with the

statute to set damages in a misclassification suit in the manner called for by § 778.114.  The

difference is not insignificant.  Take as an example an employee earning $250 per week, and assume

she works 50 hours one week.  If the traditional method is used, the regular rate for the employee

would be $6.25 per hour, and she would be entitled to overtime pay of $93.75 (10 hours times one-

and-a-half of the regular rate, or $9.375 per hour).  If the flexible workweek method is used, the

regular rate is $5.00 per hour, and the overtime premium would be $25 (10 hours times half the

regular rate, or $2.50).  Thus, the flexible workweek method results in overtime compensation 375%

lower than the traditional method.  The declared policy of the FLSA is "to correct and as rapidly as

practicable to eliminate [labor conditions detrimental to the maintenance of the minimum standard

of living necessary for health, efficiency, and general well-being of workers] without substantially

curtailing employment or earning power."  29 U.S.C. § 202(a) & (b).  It is very difficult to see how

using the flexible workweek method to compute damages is consistent with Congress' declared

policy.  Indeed, as the Plaintiffs point out, the application of the fluctuating workweek formula to

misclassification cases would permit employers to circumvent the time and one-half compensation

requirements of the FLSA.  Response at p. 12, n.10.  Under EZPawn's argument, an employer could

claim exempt status for an employee, withhold overtime, then after being held liable for failing to

pay overtime, escape the time and one-half requirement of the FLSA.  *See also Hunter,* 453 F. Supp.

---

[8]When the salary is paid on periods other than a week, § 778.113(b) provides the method for
converting that rate to a workweek equivalent.

2d at 62, n.19.[9]  Certainly nothing about allowing this would eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.

As noted earlier, as an interpretive bulletin, § 778.114 is not entitled to a high level of deference from the Court.  Assuming that the Department of Labor intended for the flexible workweek formula to apply to misclassification cases as a damage remedy, and § 778.114 is thus viewed as the Department of Labor's interpretation of § 216(b) of the Act, the interpretation is flawed.  It creates incentives at odds with the express statement of Congressional intent.  Indeed, it is likely that the Department never intended the bulletin to have a remedial reach, given its total silence on the issue at the time of its adoption and for the 40 years it has been in place.  Regardless, the conclusion that it is consistent with the Act to allow an employer to pay an employee according to the flexible workweek method when it is done contemporaneously and openly – *i.e.* when there is a mutual understanding between the employer and employee – does not mean it is also consistent with the Act to use that same method to calculate damages when the employer violates the Act by misclassifying an employee.  So, the fact that the Seventh Circuit found § 778.114 to be consistent with the FLSA as a means to pay a non-exempt employee, *see Condo*, 1 F.3d 599, says nothing about whether it would also be consistent with the Act to use the formula to calculate damages when the only understanding the employer and employee had was that the employee was exempt from

---

[9]As the court stated in *Hunter*, "if the FWW regulation were interpreted in the manner that Sprint urges, employers would have a substantial incentive to err on the side of classifying employees as FLSA-exempt whenever the functions performed are at the margins of an exemption – rather than to specifically negotiate an overtime compensation arrangement with the employee at the outset – because the financial risk associated with misclassification would be relatively small if retroactive calculation were routinely available."  *Id.*

overtime payments.[10]  The interpretation of the Act EZPawn advocates – and contends is contained within § 778.114 – is contrary to the Act's purposes and thus is invalid.  As a matter of law, then, the flexible workweek method of calculating overtime pay is not applicable to Plaintiffs' claims and EZPawn's Motion must be denied.

### E.    *Blackmon*

Finally, there is the matter of the Fifth Circuit's decision in *Blackmon v. Brookshire Grocery Company*.  In *Blackmon,* the Fifth Circuit held that the lower court erred in applying the standard time and one-half overtime calculation after the jury found that two employees were improperly classified as exempt under the FLSA.  *Blackmon*, 835 F.2d at 1138.  The court held that the standard time-and-a-half computation was "inappropriate when an employer and employee have agreed on a fixed salary for varying hours."  *Id.*  The court cited § 778.114(a) for its conclusion that the plaintiffs' damages were to be computed by "multiplying all hours over [forty] in the workweek by half the regular rate for that work-week."  *Id.* at 1139.  Read broadly, *Blackmon* requires the application of the fluctuating workweek method of calculating damages in *every* misclassification case brought under the FLSA.  *See id.* at 1138.  As recognized by the district judge in *Rainey*, the decision in *Blackmon* "was not supported by any explanation or effort to analyze the relevant statutory and regulatory language."  *Rainey*, 26 F. Supp. 2d at101.  As noted in footnote 5, several district courts in this Circuit have followed *Blackmon*, all without questioning its lack of analysis or its consistency with the statutorily-mandated measure of damages.

---

[10]The "clear mutual understanding" language contained within the bulletin suggests employee consent is required before the payment scheme is allowed.  "Mutuality" is a two-way street, and cannot exist without some participation by the employee.  Where an employee is misclassified, it is impossible for there to be the requisite mutuality, as the issue of the structure of the employee's pay vis-a-vis the overtime laws would never have been a topic of conversation.

While I do not do so lightly, I believe that the conclusion reached in *Blackmon* is fundamentally flawed. It was supported by no discussion or analysis of the issues, and assumed – wrongly – that § 778.114 has the force of law. This Court would ordinarily follow a Fifth Circuit precedent with which it simply disagrees, but there is more here than that. In this case I firmly believe that the decision in *Blackmon* is wholly inconsistent with the FLSA, and cannot be reconciled with the purposes of the Act. With respect, the Court declines to follow that decision, and urges the Circuit to revisit the issue.

## III.  CONCLUSION

For all of the reasons set forth above, the Court concludes that as a matter of law the flexible workweek method of paying overtime set forth in 29 C.F.R. § 778.114 is inapplicable to the cases before the Court. ACCORDINGLY, IT IS

ORDERED that EZPawn's Motion is DENIED. It is, further ORDERED that Plaintiff's Objections to Defendant's Summary Judgment Evidence and Defendant's Objections to Plaintiff's Summary Judgement Evidence are hereby OVERRULED as moot.

SIGNED this 18th day of June, 2008.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| | § |
| IN RE: | § |
| | § |
| TEXAS EZPAWN FAIR LABOR | § |
| STANDARDS ACT LITIGATION | § |
| | § |

**APPENDIX – ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CALCULATION OF DAMAGES, IF ANY**

| | |
|---|---|
| 1:07CA553-AWA | 1:07CA580-AWA |
| 1:07CA554-AWA | 1:07CA581-AWA |
| 1:07CA556-AWA | 1:07CA582-AWA |
| 1:07CA557-AWA | 1:07CA583-AWA |
| 1:07CA558-AWA | 1:07CA584-AWA |
| 1:07CA559-AWA | 1:07CA585-AWA |
| 1:07CA560-AWA | 1:07CA586-AWA |
| 1:07CA561-AWA | 1:07CA587-AWA |
| 1:07CA562-AWA | 1:07CA588-AWA |
| 1:07CA563-AWA | 1:07CA589-AWA |
| 1:07CA564-AWA | 1:07CA590-AWA |
| 1:07CA565-AWA | 1:07CA591-AWA |
| 1:07CA566-AWA | 1:07CA592-AWA |
| 1:07CA567-AWA | 1:07CA593-AWA |
| 1:07CA569-AWA | 1:07CA595-AWA |
| 1:07CA570-AWA | 1:07CA596-AWA |
| 1:07CA571-AWA | 1:07CA597-AWA |
| 1:07CA572-AWA | 1:07CA599-AWA |
| 1:07CA579-AWA | |